State, Newell et al., pros., v. Bassett et al.

## THE STATE, CHARLES B. NEWELL AND OTHERS, PROSECU-TORS, v. JOSEPH BASSETT AND OTHERS.

1. Courts of Common Pleas have power to appoint surveyors of highways, to vacate part of a public road.

2. Where it appears by the minutes of the pleas, that a rule to show cause why the proceedings of freeholders should not be set aside, was granted upon affidavit, and no such affidavit could afterwards be found, and the court below, on application, refused to dismiss the rule for the want of an affidavit, this court will not interpose, upon *certiorari*, to set aside the proceedings, on the ground that such refusal was error.

3. Matters resting in discretion, or on the rules and practice of the Court of Common Pleas, are under the control of those courts, and are not subject to review in this court.

4. Testimony taken in the presence of both parties, and without objection, may legally be used, although no notice of taking the same was actually given.

*Certiorari.* In matter of road.

This writ brings up for review the appointment and return of surveyors in vacating part of a public road laid out in 1855, in the county of Salem; also the certificate of freeholders, that such vacation was unnecessary, and certain rules of the Court of Common Pleas of the county, on motion to set aside the certificate of the freeholders, and to record the return of the surveyors.

Argued at November Term, 1867, before Justices ELMER, BEDLE, and DALRIMPLE, by *S. A. Allen,* for prosecutors, and *John T. Nixon,* for defendants.

BEDLE, J. The first reason urged against the appointment and return of the surveyors is, that the court had no power to appoint surveyors to vacate part of a public road. The whole road was laid out in the townships of Lower Penn's Neck and Mannington, and it was proposed to vacate a part of it in the township of Mannington.

The second section of the road act provides for the appointment of surveyors, "when ten or more persons, being freeholders, shall think a public road necessary, or any public road which hath been or shall be laid out, unnecessary, or any alteration in such road necessary." Part of a public road may be vacated in order to alter it. Whether this vacation was an alteration, in the sense of the act, or whether every vacation of a part is an alteration of the whole road, as claimed on the argument, need not now be settled, as the power to vacate a part does not rest necessarily upon the ground of an alteration. The words *public road*, in the clause "or any public road which hath been, or shall be laid out, unnecessary," apply to any part that may be considered unnecessary; such part unnecessary is the public road referred to. Nothing is more common than to speak

of any part of a highway as the public highway, or the public road.

Practically, such has been the application of those words in the courts. Considered in any other way than as meaning the part to be vacated, would lead to great difficulty. Many of the public roads of this state exist without record evidence, depending entirely upon the presumption that they were laid out at some remote time, their extent indefinite, connecting with other roads, forming continuous routes, and with no certainty as to where the particular road may begin or end. Such roads may be vacated by surveyors, as laid out roads; they are presumed to have been laid out. It could not be fairly held that any unnecessary part of such a road could not be vacated for that reason, without vacating the whole of the indefinite route. Those words, *public road,* in the clause in question, have been treated by the courts in their common application to any part of a continuous route.

This construction disposes, also, of another objection, that the notices of application, and of the meeting of the surveyors, were set up only in the township of Mannington, and not in both townships, through which the whole road, as originally laid out, ran. The whole of the part applied to be vacated is in the township of Mannington. That is the road that regulates the notices, and not the whole route, as laid.

It is also objected, that the beginning and ending of the road vacated are not described in the return with sufficient certainty. The surveyors return, in the first place, that they "think and adjudge *all that portion* of the public road leading from the Hook road, in the township of Lower Penn's Neck, over Salem creek, into the township of Mannington, (said road having been laid December 4th, 1845, and recorded in Book D of Roads, page 282,) *which lies between Salem creek, where the said road crosses the same, and where the road leading to Marshallville falls into, or joins the said* road, to be unnecessary, and do hereby vacate the same." There can be no difficulty in ascertaining, with all reasonable certainty, from this description, what part of the

road they thought unnecessary and did vacate. The beginning and ending are sufficiently fixed in that description; but in giving the courses and distances afterwards, the beginning and ending are left indefinite, taking the additional description by itself. The return, after what has already been cited, proceeds, "that part we so vacate lying within the limits of the township of Mannington, and thus more specially designated and described, that is to say, beginning at a stake at the edge of Salem creek, on the east side, on marsh of Aaron Biddle; thence across and along marsh of Aaron Biddle, heirs of John Stanley, deceased, Lot Jaquette, John T. White, heirs of Sylvanus B. Sheppard, deceased, Joseph Bassett, and Mayhew Sparks, south sixty-four and three-quarter degrees east, forty-seven chains, ninety-seven links, to a stake opposite a fence of Mayhew Sparks; thence south forty-seven degrees east, one chain, to a stake set in the road, and there to end." This part of the return must be taken in connection with the other part referred to; both are intended to be the full description of the part vacated. The beginning stake at the edge of Salem creek, on the east side, on marsh of Aaron Biddle, will be presumed to be in the road vacated, in the absence of evidence to the contrary, and where the road crosses the creek, for the surveyors return that they vacate all that portion between there and where the Marshallville road falls into it; and as to the ending of the last course and distance, it will be presumed, in the absence of evidence to the contrary, to be the ending referred to in the other part of the description. If the courses and distances had been first given, and the other part of the description added afterwards, there could have been no difficulty; but as it is, taking the two parts as a whole, it is evident that the surveyors intended to vacate the road between the creek and the Marshallville road, and that the courses and distances begin and end at those *termini*.

There is less difficulty in the application of a description to an existing road to be vacated, than to a road to be laid. The road itself may be a monument in the former case; and

where it crosses a creek, or meets another road, may be used as a point for the beginning or ending. There is no error shown in the appointment or return of the surveyors.

The prosecutors filed a *caveat* against recording the return, and freeholders were appointed, four of whom certified that the vacation was unnecessary and injurious. Afterwards, the Court of Common Pleas, at the April Term, 1866, granted a rule to show cause at the next term, why the proceedings of the freeholders should not be set aside, and the return of the surveyors recorded. This rule, as entered, shows that it was made *upon the affidavit of David Harris*, one of the freeholders, and upon the ground that the freeholders proceeded to view the road, and made their decision before they were sworn or affirmed; and that afterwards a part of the freeholders met in Salem, and signed the certificate, without any lawful adjournment to the subsequent day. Leave was granted in the same rule, to each party, to take affidavits upon the matters involved. At the October Term, 1866, the attorney of the caveators moved to discharge that rule, and the court refused. It is now claimed that the rule to show cause should not have been allowed, because there was no affidavit. The answer to that is, that the rule shows that there was, and there is no evidence that there was not; besides, the testimony of S. A. Allen, that "a paper purporting to be an affidavit was read of David Harris, in order to obtain a rule," satisfies me that the recital of such affidavit in the rule is true. Of course, every rule to show cause founded upon extrinsic facts should, in correct practice, be based upon some sort of evidence, by affidavit or otherwise; but if such a rule should be granted by the Common Pleas without any affidavit or evidence, this court ought not to interfere with it, but leave the court below to continue it, and allow proofs to be taken to sustain it, or dismiss it, in their own discretion. It is also objected that the affidavit could not be found in the clerk's office, and that the prosecutors never were able to see it. The only effect of an affidavit is to induce the granting of the rule. The facts would have

State, Newell et al., pros., v. Bassett et al.

to be proved, independently of that. If not filed, it should have been, but if not, we cannot say that the court below should have dismissed the rule; on the contrary, I think they did right in refusing to dismiss it. The rule to take affidavits was intended to bring before the court all the necessary facts, and upon them should the rule depend.

Another reason to dismiss was, that no copy of the rule was served upon the caveators, or their attorney, till ten days before the October Term, and after one witness was examined in support of the rule. Whether a copy should be served or not, depended upon the practice or rule of the Common Pleas; nothing is shown here that any such practice or rule required it. That cannot be alleged for error. It appears that the attorney of the caveators was present when the rule was granted, and the court may well have refused to dismiss by reason of that, even if its practice or rule had not been strictly complied with.

There was also an objection that no notice had been given of the taking of testimony under the first rule. Several witnesses were sworn in support of the rule. The attorney of caveators was present, and cross-examined all except one, and was present at his examination. There is no evidence of any objection to the examination, except that no copy of the rule was served. Under these circumstances, no advantage could be taken of any want of notice, if none was given. The testimony was legally taken.

That no notice of the argument of the rule at October Term was given, is no ground for dismissal. That is a matter resting in the discretion, practice, or rules of the court, and under their control. The court continued the rule, and gave the parties leave until the April Term to take further testimony. This they had a right to do. All the alleged reasons for reversal of these proceedings, or some part, have been referred to in detail, to avoid any further difficulty before the Common Pleas in relation to them. It would have been better not to have interfered with the action of the pleas upon the certificate of the freeholders, until the court

had decided either to set it aside or not, but since the prosecutors have seen fit to arrest the action of that court at this stage, and bring the certificate, rules of the court thereon, and the testimony here, it may be that this court ought to decide the facts at once, and determine upon the validity of the action of the freeholders. I have no doubt of the right to do it, but inasmuch as no testimony has been taken by the caveators, under either of the rules, it is best to allow the court below to proceed and determine the case. Whether they will not allow the caveators, after permitting the rules to expire, to take testimony, will be for that court to settle. Besides the alleged illegality depending upon the proofs, there is also a question of substance on the face of the certificate, upon which counsel have not been heard, that may yet be presented before the pleas, subject to a further review here upon *certiorari*.

This *certiorari* should be dismissed with costs, and the proceedings remitted to Salem Pleas for their action.